EHRLICH, Chief Justice.
Under the provisions of article V, section 9, of the Florida Constitution, the Florida Supreme Court is responsible for determining the need for an increase or decrease in the number of judges required to consider and dispose of cases filed before the respective courts. To this end, primarily we have analyzed case filings and evaluated the growth in the workload of the State Courts System over the past six years, in light of additional judgeships which have been authorized each year by the Florida Legislature.
As the result of this review, we are certifying the need for twenty-two circuit court judges and six county judges. A comparison of the requests for new judges filed by the respective courts and the new judge-ships certified as needed for fiscal year 1990-91 follows:
*1003 [[Image here]]
*1004 Florida Rule of Judicial Administration 2.035(b)(1) sets forth the criteria for certification of need for judges at the trial court level. As with certifications of recent years, we have placed the greatest weight on statistical data reflecting the growth and composition of case loads filed in the various circuits and counties. We have determined that the most consistent and reliable factor at the circuit court level is total case filings per judge. Criminal, civil, probate, guardianship, and juvenile case filings for each circuit were also evaluated by applying different weights reflecting the differential requirements for judicial hearing time and attention. The filings per judge statistics for the county courts were adjusted to exclude worthless check offenses and criminal and civil traffic infractions (except for DUI). In addition to those factors prescribed in Florida Rule of Judicial Administration 2.035 other factors considered include the use of county and retired judges on temporary assignment; the availability of supplemental hearing resources furnished by the counties (child support hearing officers, commissioners, and general or special masters); the reliance on mediation and arbitration to resolve cases; and special local circumstances that affect case handling.
The need for additional judgeships is more manifest at the circuit level than at any other level of the State Courts System. The circuit courts handle the most serious criminal cases, all family matters, a wide range of civil matters involving disputes valued in excess of $5,000, probate and guardianship concerns, and delinquency and dependency cases involving children and youth. These courts have realized consistent and generally substantial increases over the past six years in all of these categories, with the exception of dependency proceedings. Total circuit court filings have grown from 513,484 in 1983 to 751,568 in 1989, an increase of over 46%. The 1990 forecast for the circuit courts is expected to total 820,158 cases, an increase of just under 60% since 1983. During the same period, the number of circuit judges increased by only 17.6%, 60 judges, failing to keep pace with the substantial growth in workload.
Criminal filings over the past three years at the circuit court level have shown the most dramatic and alarming increases of all case types. In 1986, felony case filings in the circuit courts totaled 133,912. That figure increased to 146,818 in 1987; 172,-175 in 1988; and 183,736 in 1989. Drug-related offenses, particularly those involving the use and trafficking of crack cocaine, accounted for much of this increase. The number of drug-related crimes grew by 95% in that three-year period, from a 1986 total of 27,520 cases to 53,689 cases in 1989. Between 50% and 75% of prosecutions for other types of offenses, including burglary, theft, and robbery, are thought to be the result of persons seeking funds for the purchase of crack cocaine or other drugs. Juvenile delinquency filings have shown consistent increases over the past five years, ranging from 5% to 12% annually. Here, too, a large share of the delinquency filings is attributable to drug-related offenses.
These trends have had a significant effect on the ability of the courts, and the criminal justice system as a whole, to effectively deal with Florida’s growing crime problem. Judges have been reassigned to hear criminal and juvenile matters, leaving civil dockets and calendars for probate and guardianship proceedings backlogged. One court required all twenty-five civil division judges to hear criminal matters over a period of two weeks as an emergency effort to address the growing inventory of criminal cases and resulting jail overcrowding. The judges tried pending second- and third-degree felonies on a rotating basis and collectively spent the equivalent of close to an entire year of judicial time in the criminal division over the two-week period. While this unusual move helped relieve the felony backlog, the civil backlog increased. Further, Florida’s county judges have frequently been assigned on a temporary basis to handle cases at the circuit court level because of the shortage of circuit court judges. In calendar year 1989, the equivalent of approximately 21.5 *1005 judge years of county judge time was spent hearing circuit matters.
The limited availability of judicial manpower is contributing to the continued increase in the number of pleas that are entered in criminal cases. We are advised by judges and prosecutors in the trial courts that this factor in conjunction with the unprecedented growth in crimes related directly or indirectly to drugs has resulted in a far greater acceptance of pleas to lesser offenses than is deemed desirable. For example, it was reported that a mere one percent of the circuit felony cases in Dade County were disposed of via jury trial in 1989. In most circuits, defendants whose cases are set for trial are waiting in jail for longer periods, at a time when many of Florida’s jails are overcrowded and operating under population caps imposed by the federal courts.
Civil and guardianship dockets continue to grow as judicial resources are shifted to provide relief for criminal backlogs. Legislative enactments in the areas of domestic violence and guardianship have likewise increased caseload pressures. Domestic violence petitions are being filed on a more frequent basis. Thus, circuit judges are spending more time conducting emergency and final hearings, and preparing ex parte temporary injunctions and final orders. The 1989 amendments to Florida’s Guardianship Law, chapter 89-96, Laws of Florida, have resulted in judges spending more time on each phase of the process. More time is required to review annual and financial reports. More detailed data prepared by mental health and medical professionals must be reviewed. Adjudicatory hearings, which are now adversarial, are taking two to three times longer than in prior years. As a result, a number of judges are conducting pretrial conferences to narrow issues and set ground rules for expediting the hearing.
As recommended by the Supreme Court’s Workload and Statistics Committee, we used 1,865 circuit filings per judge as a threshold at which there is a presumptive need for additional judgeships. The average workload for circuit judges in Florida has grown from 1,600 filings per judge in 1984 to approximately 1,967 filings per judge in 1989, an increase of 23%. Based on forecasts of circuit filings for 1990 and current staffing levels, every court for which certification is made will handle in excess of 2,000 filings per judge this year. Seven of the courts for which certification is made will have in excess of 2,100 filings per judge. For these reasons, the certification for the circuit courts is greater in number than in past years. It is still considered conservative given that it is unlikely that any new judgeships the Legislature may authorize will be filled earlier than January 1, 1991. Thus, a substantial majority of the circuits must labor under excessive caseloads through the balance of 1990. Additionally, several of the courts for which one or more judges are certified this year might well have justified additional positions.
We considered, but did not certify, the need for an additional judge for the Third Judicial Circuit. The judges in that circuit must operate under some severe geographical constraints. The judicial time lost by the four judges in conducting hearings and trials in the seven county circuit equates to almost half of a judge year. While county judges who are qualified to hear circuit matters provide some relief via temporary assignments in their respective counties, the circuit judges are spread very thin. The circuit caseloads have shown steady increases over the past few years. However, the addition of another judge at this time would drop the average caseload of the judges to well below the 1,865 filings per judge threshold. The alternative is for the Office of the Chief Justice to commit retired judge time as may be needed in the circuit. If the caseload in the Third Judicial Circuit continues to grow at the present rate, we anticipate that certification of an additional judge may well be justified next year.
Growth in case loads in county courts has been more modest over the past three to four years than at the circuit level, but case loads did increase substantially from 1988 to 1989. Criminal and civil case filings totaled 767,170 in 1988 and jumped to *1006 847,288 in 1989, a 10% increase. This accounts for the largest number of requests for new county judgeships we have received in many years. Like the growth in circuit filings, much of the increase is attributable to drug and drug-related offenses. The Court is certifying the need for six new county court judges.
In evaluating the need for such positions, we relied principally on filings data that was adjusted to include only criminal, civil, and DUI cases. Worthless check cases, non-DUI criminal traffic, and civil traffic infractions were excluded because of their limited requirements for judicial time, the diversion of large numbers of worthless check cases in selected circuits, and the variability and volume of such cases reported from county to county. We used 4,000 adjusted filings per judge as the threshold at which there is a presumptive need for additional positions. County courts with case loads near or exceeding that level are judged to be operating at capacity. Those courts, with such workloads, had scant time to assist with case assignments at the circuit court level. Where the judges in these counties did help with circuit court workload, it was to the detriment of case processing in the county courts. All counties for which certification of need is made are projected to have between 3,967 and 5,143 adjusted filings per judge in 1990.
We also considered the possible impact of implementation of the 1988 amendment to the Florida Constitution authorizing the establishment of civil traffic infraction hearing officers. Implementing legislation was passed in 1989, but only the Eleventh Judicial Circuit in Dade County and the Thirteenth Judicial Circuit in Hillsborough County are participating in a pilot program to employ traffic magistrates. County court caseloads in these counties are in the range where additional judgeships would likely be requested, but neither court made a request this year. However, it is still too early to assess the savings in judicial time that would result if traffic magistrates were used more extensively.
Florida trial courts have addressed workload pressures by relying heavily on the temporary assignment of retired judges. A total of 4,055 days of service were provided by retired judges in fiscal year 1988-89. This is the equivalent of slightly over 19 judge years. We expect demand for retired judge service to continue to grow. This is particularly true as the Office of the Statewide Prosecutor is now staffed to try a greater number of cases than in prior years. Such cases generally do not conclude in pleas and result in lengthy trials with multiple defendants, which strain existing judicial resources. The Statewide Prosecutor has requested that approximately 400 days of retired judge time be allocated to conduct these trials. Requests by chief judges for the assignment of retired judges to hear such cases are expected to become routine. For the foregoing reasons, the Court is seeking full funding of its fiscal year 1990-91 budget request, for approximately 4,500 days of retired judge service. This is viewed as a critical companion measure of the judicial certification.
Caseload statistics for the district courts of appeal reported to the Office of the State Courts Administrator indicate that three of the five courts have realized slight reductions in filings from 1988 to 1989. Notwithstanding this change and the addition of three new judges to Florida’s intermediate appellate courts, effective January 1, 1990, the caseloads of individual judges in' all five courts will remain at higher levels than desired. Florida Rule of Judicial Administration 2.035(b)(2)(A) establishes “a primary case load of 250 filings per judge” as the level at which additional judgeships are required. As Florida’s district courts sit in panels of three, each judge is expected to be conversant with the briefs, record on appeal, and precedents related to three times the number of cases which the judge may handle as primary judge.
District court filings per judge in 1990 are projected to range between 264 for the First District Court of Appeal and 312 for the Second District Court of Appeal. The Third, Fourth, and Fifth District Courts of Appeal will all have in excess of 290 filings per judge. This Court remains concerned *1007 that judges handling workloads of that size will not have sufficient time for as thorough a review of cases as is necessary. We are, however, encouraged by reports of the use of special procedures designed to expedite the handling and settlement of cases in certain of these courts. Several district courts have experimented with “fast track” procedures designed to expedite the handling of certain priority cases. The Fourth District Court of Appeal, with a grant from the State Justice Institute and continuation general revenue funding, has implemented an experimental appellate mediation program for civil eases. We will carefully reevaluate the need for additional district court of appeal judgeships next year. In the meantime, we endorse full funding of the request of the Fourth District Court of Appeal for continuation of its appellate settlement program.
We received a request for only one additional district court of appeal judge, from the Third District, but we are not requesting legislative authorization for that judgeship at this time.
The chief judges of the trial and appellate courts were urged to ask for only the number of judges they feel are truly necessary to keep up with increases in case filings and avoid further backlogs. We feel that they have responded in good faith. Full funding for the requests certified is deemed absolutely essential' if Florida’s courts are to fulfill their constitutional duties to try cases in a fair, impartial, and timely manner.
SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
OVERTON, J., concurs specially with an opinion, in which McDONALD, J., concurs.
McDONALD, J., concurs in result only.